1

SHARTSIS FRIESE LLP
JAMES P. MARTIN (Bar #170044)

2

JOSEPH V. MARTIN (Bar #253693)
One Maritime Plaza, Eighteenth Floor

3

San Francisco, CA  94111
Telephone:  (415) 421-6500

4

Facsimile:  (415) 421-2922
Email:  jmartin@sflaw.com, jmauch@sflaw.com

5

6

Attorneys for Plaintiffs
PH(X) GLASS, LLC and CHRISTOPHER
CARSTENS

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12

PH(X) GLASS, LLC and CHRISTOPHER
CARSTENS,

Case No.  C 08-02533 PJH

13

Plaintiffs,

**PLAINTIFFS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF EX PARTE MOTION FOR
TEMPORARY RESTRAINING ORDER
AND ORDER SETTING BRIEFING AND
HEARING SCHEDULE FOR
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

14

v.

15

16

ROLAND CLARKE, PIC GLASSWARE,
INC., JAMN EXACT, INC., and DOES 1
through 10, inclusive,

17

Defendants.

Date:
Time:

18

Judge:      Hon. Phyllis J. Hamilton

19

Location:   Courtroom 3, 17th Floor
Trial Date:  Net Yet Set

20

Amended Complaint Filed: June 12, 2008

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 2

      A.    The Parties................................................................................................ 2

      B.    Carstens Began Marketing, Selling, and Distributing Products
            Bearing the Marks in June of 2002 ......................................................... 3

      C.    Carstens Entered into an Agreement with Clarke and PIC Glassware
            that Clarke and PIC Glassware Subsequently Breached........................... 4

      D.    Defendants Continued to Use the Marks in Commerce
            Although All Rights to the Marks Reverted to Carstens When
            Clarke and PIC Glassware Breached the Contract.................................... 5

      E.    Plaintiffs Attempted to Stop Defendants' Infringement and to
            Avoid Litigation Before Filing a Complaint............................................ 6

      F.    Defendants Have Taken Extraordinary Measures to Evade Service of
            Process but Their Conduct Demonstrates Awareness of the Complaint.... 6

      G.    Defendants Also Responded to the Filing of the Original Complaint
            by Continuing to Market, Sell, and Distribute Infringing Products........ 8

      H.    Plaintiffs Filed an Amended Complaint and Ultimately Succeeded in
            Serving Jamn Exact.................................................................................. 8

      I.    Plaintiffs Notified Defendants of Their Intent to Seek a Temporary
            Restraining Order...................................................................................... 9

III.  ARGUMENT ....................................................................................................... 9

      A.    Plaintiffs Are Entitled to a Temporary Restraining Order ..................... 10

      B.    Plaintiffs Are Likely to Succeed on Their Trademark Infringement Claim .......... 11

            1.    PH(X) Glass Is the Rightful Owner of the Common Law Marks.............. 11

            2.    Defendants' Unauthorized Use of the Marks Has Caused and Will
                  Continue to Cause a Likelihood of Confusion............................................. 12

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

C.    A. Plaintiffs Are Likely to Succeed on Their Claims for
Unfair Competition and Unfair Business Practices Under
California Business and Professions Code Section 17200 .................................. 14

D.    Plaintiffs Will Suffer Substantial Irreparable Harm in the
Absence of Immediate Injunctive Relief ................................................ 15

E.    The Balance of Hardships Weighs Heavily in Favor of Plaintiffs ......................... 16

IV.    CONCLUSION ............................................................................. 17

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979)................................................................. 12

*Abbott Laboratories, v. Mead Johnson & Co., Inc.*,
  971 F.2d 6 (7th Cir. 1992)................................................................. 15

*Apple Computer, Inc. v. Formula International Inc.*,
  725 F.2d 521 (9th Cir. 1984)................................................................. 12

*Avery Dennison Corp. v. Sumpton*,
  189 F.3d 868 (9th Cir. 1999)................................................................. 12

*Brookfield Communications. Inc. v. W. Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999)................................................................. 12

*Burger King Corp. v. Mason*,
  710 F.2d 1480 (11th Cir. 1983)................................................................. 13

*Comedy III Prods., Inc. v. New Line Cinema*,
  200 F.3d 593 (9th Cir. 2000)................................................................. 11

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000)................................................................. 10, 12

*Gucci American, Inc. v. Pieta*,
  2006 U.S. Dist. LEXIS 96701 (C.D. Cal. 2006)................................................................. 13

*International Jensen, Inc. v. Metrosound U.S. A., Inc.*,
  4 F.3d 819 (9th Cir. 1993)................................................................. 15

*Kendall-Jackson Winery v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998)................................................................. 11

*New West Corp. v. NYM Co. of Calif., Inc.*,
  595 F.2d 1194 (9th Cir. 1979)................................................................. 11

*Novartis Consumer Health, Inc. v. Johnson & Johnson Merck Pharmaceuticals*,
  129 F. Supp. 2d 351 (D.N.J. 2000) ................................................................. 16

*Ocean Garden, Inc. v. Marktrade Co.*,
  953 F.2d 500 (9th Cir. 1991)................................................................. 12

*Regents of University of California v. ABC*,
  747 F.2d 511 (9th Cir. 1984)................................................................. 15

*Rodde v. Bonta*,
  357 F.3d 988 (9th Cir. 2004)................................................................. 10

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001) ........................................................................ 10

*Sunsport Inc. v. Barclay Leisure Ltd.*,
    984 F. Supp. 418 (E.D. Va. 1997) ............................................................... 13

*Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*,
    83 F. Supp. 2d 1016 (D. Minn. 2000) ......................................................... 16

*Triad Sys. Corp. v. Southeastern Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) ....................................................................... 10

*Visa International Service Association v. Visa/Master Charge Travel Club*,
    213 U.S.P.Q. 629 (N.D. Cal. 1981) ............................................................. 15

*Visioneer, Inc. v. Umax Technologies, Inc.*,
    1998 U.S. Dist. LEXIS 23431 (N.D. Cal. 1998) ....................................... 16

*Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply*,
    106 F.3d 894 (9th Cir. 1997) ....................................................................... 13

### STATE CASES

*American Philatelic Soc. v. Claibourne*,
    3 Cal. 2d 689 (Cal. 1935) ............................................................................ 14

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1992) ................................................................................. 14

*Industrial Indemnity Co. v. Apple Computer, Inc.*,
    79 Cal. App. 4th 817 (1999) ........................................................................ 14

### STATUTES

Cal. Bus. & Prof. Code § 17200 (2008) ............................................................ 14

Cal. Bus. & Prof. Code §§ 17203 ..................................................................... 14

15 U.S.C. § 1125(a) .......................................................................................... 11

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 08-02533 PJH

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

Plaintiffs PH(X) GLASS, LLC and CHRISTOPHER CARSTENS (collectively "Plaintiffs") submit this Memorandum of Points and Authorities in support of their Ex Parte Motion For Temporary Restraining Order And Order Setting Briefing And Hearing Schedule For Plaintiffs' Motion For Preliminary Injunction against Defendants ROLAND CLARKE, PIC GLASSWARE, INC., and JAMN EXACT, INC. (collectively "Defendants").

## I.    **INTRODUCTION**

This origin of this action is a breach of contract followed by, among other things, patent infringement, trademark infringement, and unfair competition.  Plaintiff Christopher Carstens ("Carstens") is an inventor and the original owner of a patent and the common law trademarks "PH(X)" and "PH(X) GLASS," as well as the logos incorporating the marks (collectively, the "Marks").  On June 1, 2005, Carstens entered into a written agreement with Defendants PIC Glassware, Inc. ("PIC Glassware") and Roland Clarke ("Clarke"), whereby Carstens agreed to assign his rights to the patent and the Marks to them in return for monthly payments of $10,000 until Carstens had received a total amount of $1,500,000.  As set forth in more detail below, Defendants have breached the written agreement by failing to pay Carstens the amounts owed.  As a result of such breach, all right, title, and interest in and to the patent and the Marks automatically and immediately reverted to Carstens pursuant to the terms of the parties' contract.

Although Defendants have ceased making the contractual payments to Carstens, Defendants continue to sell products bearing the Marks.  Carstens, after assigning his rights to Plaintiff PH(X) Glass, LLC ("PH(X) Glass"), filed a Complaint with PH(X) Glass against Clarke and PIC Glassware in this Court. After Clarke and PIC Glassware evaded service of process, Plaintiffs conducted an additional investigation and learned of the existence of Defendant Jamn Exact, Inc. ("Jamn Exact").  Plaintiffs filed an Amended Complaint against all three Defendants on June 12, 2008.

Plaintiffs now seek immediate injunctive relief in order to prevent continued irreparable damage to their trademarks and their business.[1]  As set forth in more detail below, Defendants

---

[1] Plaintiffs are also suffering substantial harm due to Defendants' patent infringement and other acts.  Through this motion, Plaintiffs focus solely on trademark infringement and other acts where irreparable harm is presumed.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    have not ceased their infringing activity and have, in fact, increased their infringement after the

2    Complaint was filed.  Customers have recently contacted Plaintiffs and informed Plaintiffs that

3    they believed they were purchasing authorized PH(X) Glass products when they made purchases

4    from Defendants.  Customers have also recently informed Plaintiffs that they have received sales

5    calls from Clarke in which he identified himself and attempted to pass himself off as Carstens

6    and/or as a representative of PH(X) Glass in order to sell Defendants' products carrying the

7    Marks.

8           Plaintiffs thus bring this Motion to enjoin Defendants, their officers, agents and

9    employees, and all others in active concert or participation with them, and each of them, from: (a)

10   falsely representing himself, herself, or itself to be Christopher Carstens or a representative of

11   PH(X) Glass, LLC; (b) manufacturing, selling, offering for sale, marketing, or distributing any

12   glass water pipes or other products with the Marks; and (c) engaging in any other acts or conduct

13   that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

14   connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or

15   approval of Defendants' goods, services, or commercial activities by Plaintiffs.

## II.    FACTUAL BACKGROUND

### A.    The Parties

18          Plaintiff PH(X) Glass is a limited liability company organized under the laws of the State

19   of Delaware with its principal place of business at 17287 Skyline Boulevard, Woodside,

20   California.  Declaration of Christopher Carstens in Support of Plaintiffs' Ex Parte Motion for

21   Temporary Restraining Order and Order Setting Briefing And Hearing Schedule For Plaintiff's

22   Motion For Preliminary Injunction ("Carstens Decl."), ¶ 2;  Amended Complaint ("AC"), ¶ 7.

23   PH(X) Glass is the owner by assignment of certain intellectual property, including the Marks.

24   Carstens Decl., ¶ 2; AC, ¶ 33.  Plaintiff Carstens is the managing member of PH(X) Glass.

25   Carstens Decl., ¶ 7; AC, ¶ 8.  Carstens is a citizen of the State of California residing in Woodside,

26   California.  Carstens Decl., ¶ 1; AC, ¶ 8.

27

28

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.                PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
C 08-02533 PJH                FOR TEMPORARY RESTRAINING ORDER

Defendant Clarke is a citizen of Canada living at 1820 "A" Encinal Avenue in Alameda, California. Carstens Decl., ¶ 3. AC, ¶ 9. Clarke has formed two corporations for the purpose of carrying out the infringing activity at issue in this case. Carstens Decl., ¶ 3. Defendant PIC Glassware was incorporated by Clarke in 2005, and Clarke is a director and officer of PIC Glassware. Carstens Decl., ¶ 3; AC, ¶ 9. PIC Glassware has consented to jurisdiction in California. Carstens Decl., Ex. 3, § 5.5; AC, ¶ 9. Defendant Jamn Exact was incorporated by Clarke in 2006 in order to, among other things, warehouse, pack, and ship products marketed and sold by PIC Glassware. Carstens Decl., ¶ 3; AC, ¶ 10. Jamn Exact is organized under the laws of California and Clarke is the President of Jamn Exact. Declaration of James P. Martin in Support of Plaintiffs' Ex Parte Motion for Temporary Restraining Order and Order Setting Briefing And Hearing Schedule For Plaintiff's Motion For Preliminary Injunction ("Martin Decl."), ¶ 1; AC, ¶ 9. Defendants Clarke, PIC Glassware, and Jamn Exact are all doing business, and the acts alleged herein have occurred, in this District. Carstens Decl., ¶ 3; AC, ¶ 9.

**B.** **Carstens Began Marketing, Selling, and Distributing Products Bearing the Marks in June of 2002**

On or about February 28, 2002, Carstens and his father, Daniel Carstens, filed with the United States Patent and Trademark Office ("the PTO") a Provisional Patent Application for the invention. Carstens Decl., ¶ 4; AC, ¶ 13. In and around June 2002, Carstens began using the Marks in commerce on glass water pipes that were the subject of the Provisional Patent Application. Carstens Decl., ¶ 5; AC ¶ 14. Carstens also began using the Marks on other products, including T-shirts, lighters, and banners. *Id.* Carstens subsequently sold a large number of products carrying the Marks. *Id.* These products and the Marks associated with them became well known to consumers and acquired considerable goodwill. *Id.*

On or about February 28, 2003, Carstens filed a Nonprovisional (Utility) Patent Application for the invention. Carstens Decl., ¶ 6; AC, ¶ 15. On or about February 17, 2005, the PTO issued a Notice of Allowance for all of the claims of the Nonprovisional Patent Application.

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Carstens Decl., ¶ 6; AC, ¶ 15.    United States Patent No. 6,935,345 ("the '345 Patent")

subsequently issued on or about August 30, 2005.  Carstens Decl., ¶ 6; AC ¶ 15, Ex. A.

**C.**    **Carstens Entered into an Agreement with Clarke and PIC Glassware that Clarke and PIC Glassware Subsequently Breached**

After the Notice of Allowance was received and prior to the issuance of the '345 Patent,

Carstens entered into a Technology and Patent Rights Sale Agreement with Clarke and PIC

Glassware, effective June 1, 2005 (the "Agreement").    Carstens Decl., ¶ 7; AC, ¶ 16.    The

Agreement was never modified or amended by the parties.    Carstens Decl., ¶ 8; AC, ¶ 16.

Pursuant to the Agreement, Carstens agreed that he would assign certain intellectual property

rights to PIC Glassware and Clarke in return for specified payments over time.  Carstens Decl.,

Ex. 7, §§ 2.1, 2.3; AC, ¶ 17.    Pursuant to Section 2.3 of the Agreement, PIC Glassware and

Clarke were jointly and severally obligated to deliver to Carstens one hundred fifty (150) monthly

payments, each in the minimum amount of $10,000, from the effective date of the Agreement

until Carstens had received the total amount of $1,500,000. Carstens Decl., Ex.7, § 2.3; AC, ¶ 17.

The first monthly payment was due on July 1, 2005.  *Id.*  Each subsequent monthly payment was

required to be delivered to Carstens by the first day of the month following the previous monthly

payment. *Id.*

Defendants failed to pay Carstens the amounts due under the Agreement.  Carstens Decl.,

¶ 8; AC, ¶ 18.  Defendants made partial payments to Carstens that ranged from $0 to $7,500 each

month, following the Effective Date of the Agreement through January 2007.  *Id.*  Defendants

have made no payments to Carstens since that time.  *Id.*  At no time did Defendants ever tender to

Carstens a monthly contractual payment equal to or greater than the $10,000 minimum required

by the Agreement.  *Id.*  Although Carstens cashed some of the checks for partial payment by

Defendants, Carstens did not waive Defendants' compliance thereunder.  *Id.*  Moreover, Section

5.8 of the Agreement prohibits any modification or amendment except by another agreement in

writing signed by the parties, and the parties never signed such an agreement.  Carstens Decl., Ex.

8; § 5.8; AC, ¶ 18.  Pursuant to Section 2.3 of the Agreement, Defendants' failure to pay the

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

amounts due constituted an immediate and material breach of the Agreement.  Carstens Decl., Ex. 10; § 2.3; AC, ¶ 18.

**D.    Defendants Continued to Use the Marks in Commerce Although All Rights to the Marks Reverted to Carstens When Clarke and PIC Glassware Breached the Contract**

All rights to the Marks immediately reverted to Carstens upon Defendants' failure to pay the amounts due.  Pursuant to Section 3.2 of the Agreement, all right, title, and interest in "Patent Rights, Trademark Rights, Technology, and Confidential Information," as defined in the Agreement, immediately reverted to Carstens following Defendants' failure to deliver on time any of the monthly payments required under the Agreement.  Carstens Decl., Ex. 10; § 3.2; AC, ¶ 19.  The Agreement defines "Trademark Rights" to include, among other things, the "PH(X)" trademark, the PH(X) logo, and the PHXGLASS.COM domain name.  Carstens Decl., Ex. 9; § 1.2; AC, ¶ 19.

Although Defendants have ceased making any payments to Carstens, Defendants have continued to infringe upon the Marks by selling water pipes and other products bearing the Marks following termination of the Agreement.[2]  Carstens Decl., ¶ 9; AC, ¶ 10.  Moreover, as described below, Defendants' infringing activity has not only continued to the present day but has actually increased since the filing of this lawsuit on account of Clarke's attempts to pass himself off to customers as Carstens and/or as a representative of PH(X) Glass.  Carstens Decl., ¶¶ 12 & 13; AC, ¶ 26.  Defendants advertise their water pipes and other products containing the Marks in magazines with national circulation and on Internet websites such as PHXGLASS.COM, PHXGLASS.CA, and CAFEPRESS.COM/PHXCPSHOP.  Carstens Decl., ¶ 9; AC, ¶ 20.  The products sold by Defendants include not only the water pipes, but also T-shirts, coffee mugs, tote bags, hats, stickers, magnets, and other merchandise bearing the Marks.  *Id.*  The sale by Defendants of such merchandise bearing the Marks following termination of the Agreement constitutes trademark infringement.

---

[2] Defendants have also continued to infringe the '345 Patent and Plaintiffs' other intellectual property rights, as alleged in the Amended Complaint.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

**E.    Plaintiffs Attempted to Stop Defendants' Infringement and to Avoid Litigation Before Filing a Complaint**

On February 29, 2008, Carstens entered into an agreement with PH(X) Glass, assigning all rights and interests in the Marks to PH(X) Glass.  Carstens Decl., ¶ 10.  On February 29, 2008, Plaintiffs sent a cease and desist letter to Clarke and PIC.  Martin Decl., ¶ 2; AC, ¶ 21.  Among other things, Plaintiffs requested that Defendants confirm in writing that they would immediately cease and desist from any further use of the "Patent Rights, Trademark Rights, Technology and Confidential Information," as each is defined in the Agreement.  *Id.*  On March 3, 2008, Defendants responded to Plaintiffs' February 29 letter.  *Id.*  Defendants' letter appears to have been written without the assistance of legal counsel.  *Id.*  Among other things, Defendants refused to cease and desist from any further infringement.  *Id.*

On March 9, 2008, Plaintiffs sent another letter to Defendants that urged Defendants to retain legal counsel and reiterated Plaintiffs' requests and legal position.  Martin Decl., ¶ 3; AC, ¶ 23.  In response to Defendants' request, Plaintiffs also provided Defendants with a signed copy of the Agreement.  *Id.*  Defendants subsequently retained legal counsel, but the parties' efforts to avoid litigation were unsuccessful.  Martin Decl., ¶ 3; AC, ¶ 24.  On May 19, 2008, Plaintiffs filed a Complaint against Clarke and PIC Glassware in this Court (the "Complaint").  Martin Decl., ¶ 3.

**F.    Defendants Have Taken Extraordinary Measures to Evade Service of Process but Their Conduct Demonstrates Awareness of the Complaint**

When Plaintiffs attempted to serve Clarke and PIC Glassware with the Complaint, Clarke and PIC Glassware evaded service.  Martin Decl., ¶ 4.  Between May 20, 2008, and June 11, 2008, process servers made sixteen (16) attempts to serve Clarke, individually and on behalf of PIC Glassware, at his only known residence.  *Id.*  The process server reported, among other things, that Clarke refused to answer his door despite being present at his residence; and that later a handwritten sign was posted on the entrance to Clarke's residence stating that he had

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 6 -

moved and the residence was filled with moving boxes.  *Id.*  In addition to these actions, Defendants have engaged in further extraordinary measures to evade service of process.  *Id.*

Defendants' conduct demonstrates that they were aware of the filing of the Complaint almost immediately after it was filed.  On May 24, 2008, Clarke sent an email to Peter Kazanjy, a member of PH(X) Glass.  Carstens Decl., ¶ 11.  In the email, Clarke stated, "It seems your old friend [Carstens] has jumped off the deep end and sued me in Federal court."  *Id.*  Clarke then inquired if Kazanjy would be "testifying" in the lawsuit.  *Id.*  On May 29, 2008, in Plaintiffs' efforts to execute service of process on Clarke and PIC Glassware, Plaintiffs sent an email to and spoke with John C. Kirke ("Kirke") of Donahue Gallagher Woods LLP, who had represented Clarke and PIC Glassware during settlement negotiations.  Martin Decl., ¶ 5.  Kirke confirmed that he would not be representing Clarke in the litigation, but agreed to speak with Clarke about service of process.  *Id.*  On May 30, 2008, Kirke sent an email stating that Clarke had denied evading service, and Kirke suggested that he could accept service on behalf of Clarke and PIC Glassware if Plaintiffs granted a thirty (30) day extension to respond.  *Id.*  On May 30, 2008, Plaintiffs sent an email to Kirke in response, stating that Plaintiffs would be willing to grant a shorter extension of time.  *Id.*  On June 1, 2008, Kirke sent an email in response, stating, "This should be acceptable, let me speak with Roland."  *Id.*  On June 2, 2008, having not heard from Kirke, Plaintiffs sent another email to him.  *Id.*  Kirke sent an email in response, stating, "I am not authorized to accept service on behalf of Roland Clarke or his company, and neither my firm nor I represents Mr. Clarke or his company."  *Id.*

Shortly after the Amended Complaint was filed and served on Jamn Exact, Defendants called Carstens' residence.  On June 15, 2008, at approximately 7:00 P.M., Clarke called Carstens' residence and spoke to his fiancée, Heather Gillette.  Declaration of Heather Gillette in Support of Plaintiffs' Ex Parte Motion for Temporary Restraining Order and Order Setting Briefing And Hearing Schedule For Plaintiff's Motion For Preliminary Injunction ("Gillette Decl."), ¶ 3.  Clarke demanded to speak to Carstens.  *Id.*  Although Clarke refused to identify himself, Gillette had spoken to Clarke on numerous occasions and recognized his voice.  *Id.*  Clarke himself even stated to Gillette during the call that "you know who this is."  *Id.*  After

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 7 -

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

Gillette repeatedly asked him if she could take a message for Carstens, Clarke replied, "Just tell him that someone is looking for him."  Gillette Decl., ¶ 3.

### G.  Defendants Also Responded to the Filing of the Original Complaint by Continuing to Market, Sell, and Distribute Infringing Products.

Defendants' response to the filing of this action has been to continue the marketing, sale, and distribution of infringing products. The infringing activity has actually increased on account of Clarke's attempts to pass himself off as Carstens and/or as a representative of PH(X) Glass. Plaintiffs are currently aware of at least two occasions in which Clarke has made sales calls to customers shared by Plaintiffs and Defendants and attempted to pass himself off as Carstens and/or a representative of PH(X) Glass.[3]  Carstens Decl., ¶¶ 12-13.   In and around May of 2008, Clarke attempted to pass himself off as a representative of PH(X) Glass to the owner of a retail store in Northern California.  *Id.*  On June 3, 2008, Clarke called the owner of another retail store in Indiana, represented that he was "Chris from PH(X) Glass," and attempted to procure an order for water pipes and other merchandise.  *Id.*

### H.  Plaintiffs Filed an Amended Complaint and Ultimately Succeeded in Serving Jamn Exact

In their efforts to effectuate service of process on Clarke and PIC Glassware, Plaintiffs conducted a further investigation and discovered the existence of Jamn Exact.  Martin Decl., ¶ 6. Jamn Exact was incorporated by Clarke in 2006 in order to, among other things, warehouse, pack, and ship products marketed and sold by PIC Glassware.   Carstens Decl., ¶ 3; AC, ¶ 10. Immediately after making this discovery, on June 12, 2008, Plaintiffs filed an Amended Complaint against Defendants.  Martin Decl., ¶ 6.  On the following day, June 13, 2008, Plaintiffs served Jamn Exact through its registered agent for service of process.  *Id.*

---

[3] Plaintiffs became aware of Defendants' activities only after two different customers informed Carstens that Clarke had contacted them purporting to be "Chris from PH(X) Glass."  Through discovery, Plaintiffs expect that they will learn of similar conduct directed at other customers. Plaintiffs would not have been aware of such conduct but for the fact that the customers recognized Clarke's voice and subsequently reported the contact to Carstens.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

I.    **Plaintiffs Notified Defendants of Their Intent to Seek a Temporary Restraining Order.**

On June 17, 2008, Plaintiffs sent an email to Clarke, informing him of their intention to file an ex parte motion for a temporary restraining order enjoining him from passing himself off as a representative of PH(X) Glass and enjoining the Defendants from selling, marketing, or distributing any product that infringes on the Marks.  Martin Decl., ¶ 7.  Plaintiffs also attached to the email copies of all documents to be served on Clarke and PIC Glassware.  *Id.*  Plaintiffs received an email in response that appeared to have been generated automatically and purported that Clarke was "on extended vacation" and that he would "respond to [the] request as soon as possible."  *Id.*  On June 20, 2008, Plaintiffs sent another email to Clarke, informing him that they intended to file their ex parte motion on Monday, June 23, 2008.  *Id.* Plaintiffs will provide Clarke and PIC Glassware with all papers filed with the Court in connection with this Motion by sending such documents to Clarke's email address and to his last known post office box, in addition to serving Jamn Exact through its registered agent for service of process.  *Id.*

III.    **ARGUMENT**

Plaintiffs are entitled to a temporary restraining order and preliminary injunctive relief that prohibits Defendants, their officers, agents and employees, and all others in active concert or participation with them, and each of them, from: (a) falsely representing himself, herself, or itself to be Christopher Carstens or a representative of PH(X) Glass, LLC; (b) manufacturing, selling, offering for sale, marketing, or distributing any glass water pipes or other products with the Marks; and (c) engaging in any other acts or conduct that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiffs.  Plaintiffs are entitled to this injunctive relief because they are likely to succeed on the merits of their trademark claims against Defendants; they will suffer irreparable harm if this relief does not issue; and the balance of hardships weighs heavily in their favor.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

**A.    Plaintiffs Are Entitled to a Temporary Restraining Order**

To obtain a temporary restraining order and preliminary injunction, a plaintiff generally must demonstrate a strong likelihood of success on the merits, the possibility of irreparable injury to plaintiffs if preliminary relief is not granted, a balance of hardships favoring the plaintiffs, and, in certain cases, advancement of the public interest.[4]  *Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004).  Alternatively, injunctive relief may also be granted if the plaintiffs demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in their favor.  *Id*.  These two alternatives represent extremes of a single continuum, rather than two separate tests.  *Id*.  As a result, the greater the relative hardship to the party seeking the preliminary injunction, the less the probability of success that must be established by the moving party.  *Id*.

The standard to obtain preliminary injunctive relief is somewhat different in trademark infringement cases because a showing of likelihood of success on the merits raises a presumption of irreparable harm.  *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000) (holding that plaintiff in trademark infringement suit who establishes likelihood of success on the merits is entitled to a presumption of irreparable injury); *see also Triad Sys. Corp. v. Southeastern Express Co*., 64 F.3d 1330, 1334 (9th Cir. 1995) (holding that copyright plaintiff who makes out a prima facie case of infringement is entitled to preliminary injunction without a detailed showing of irreparable harm).  This presumption "effectively conflates the dual inquiries of this prong" – the "probable success on the merits" plus "possibility of irreparable injury" prong – into the single question of whether the plaintiff has shown a likelihood of success on the merits.  *GoTo.com*, 202 F.3d at 1205 n. 4.  For the reasons explained below, Plaintiffs are entitled to a temporary restraining order and preliminary injunction in this case.

---

[4]    The standards for a temporary restraining order and for a preliminary injunction are substantially the same.  *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc*., 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

**B.**    <u>Plaintiffs Are Likely to Succeed on Their Trademark Infringement Claim</u>

Trademark infringement precludes a party from using another's mark or name if it will cause a likelihood of confusion or deception as to the origin of the goods or product.  *New West Corp. v. NYM Co. of Calif., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).  To establish a claim for trademark infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must establish "the existence of a trademark and the subsequent use of the mark by another in a manner likely to create consumer confusion."  *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000).[5]  Here, Plaintiffs have a strong likelihood of succeeding on their trademark infringement claim because (1) they are the owner and original user of the common law Marks, and (2) Defendants are using the Marks in a manner that is highly likely to cause confusion.

**1.**    **PH(X) Glass Is the Rightful Owner of the Common Law Marks**

Carstens was the first to actually use the Marks in commerce.  As described above, in and around June of 2002, Carstens began using the Marks on glass water pipes that he was marketing, selling, and distributing, primarily in Northern California.  Carstens Decl., ¶ 5; AC, ¶ 14.  Soon after, Carstens also began using the Marks on T-shirts, lighters, and banners.  *Id.*  In and around June of 2005, Carstens assigned his rights and interests in the Marks to Clarke and PIC Glassware under the terms of the Agreement.  *See supra* at p. 4.  In and around January of 2007, Clarke and PIC Glassware breached the Agreement.  *Id.*  Upon the breach of the agreement, all rights to the Marks immediately reverted to Carstens and he again became the owner of the Marks.  *Id.*  After the assignment to PH(X) Glass in 2008, PH(X) Glass now owns the rights to the Marks, including the right to protect them from infringement by Defendants.  *Id.* at p. 5.

---

[5]  A trademark need not be registered in order to be protected from infringement under section 43(a) of the Lanham Act.  *Kendall-Jackson Winery v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.7 (9th Cir. 1998).

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

2.     **Defendants' Unauthorized Use of the Marks Has Caused and Will Continue to Cause a Likelihood of Confusion**

"The likelihood of confusion is the central element of trademark infringement, and the issue can be recast as the determination of whether the similarity of marks is likely to confuse customers about the source of the products." *GoTo.com*, 202 F.3d at 1205 (citation and quotation omitted). To prove that a defendant has infringed a trademark, a plaintiff must show that the defendant "is using a mark confusingly similar to a valid, protectable trademark of the plaintiffs." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873 (9th Cir. 1999) (citation omitted). To determine whether the defendant's use of a trademark is likely to cause confusion, courts in the Ninth Circuit examine eight factors: (1) the strength of the mark; (2) the similarity of the marks; (3) the proximity of the goods; (4) the marketing channels used; (5) the type of goods and degree of care likely to be exercised by purchasers; (6) the defendants' intent in selecting the mark or trade dress; (7) evidence of actual confusion; and (8) likelihood of expansion of product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979); *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 506 (9th Cir. 1991).[6] Each of the *Sleekcraft* factors weigh heavily in Plaintiffs' favor and leaves no doubt that Defendants' use of the Marks is likely to cause confusion.

Here, Defendants are not using a mark that is merely confusingly similar to the Marks owned by PH(X) Glass: Defendants are using the Marks themselves without authorization. Moreover, Defendants are using the Marks to market and sell the same products in the same marketing channels. Defendants are marketing and selling unauthorized glass water pipes bearing the Marks to many of the same retail shops and online commercial websites to which Plaintiffs market and sell their glass water pipes. Carstens Decl., ¶ 12. The likelihood of confusion is

---

[6]   The Ninth Circuit has acknowledged that this eight-factor test is flexible, and the relative importance of each factor is specific to the individual case. *Brookfield Communications. Inc. v. W. Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). The Ninth Circuit has also acknowledged that at the preliminary injunction stage, the trial court need not consider each factor. *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 526 (9th Cir. 1984). In this case, however, each factor favors Plaintiffs.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 08-02533 PJH

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

further increased because many of the wholesale and retail customers do not realize that Defendants no longer have the right to be selling products carrying the Marks due to the Defendants' breach of the Agreement.

The continued use of a trademark by an assignee after a reversion of the trademark rights back to the original assignor constitutes use of a trademark that is likely to cause confusion.  *See Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply*, 106 F.3d 894, 900 (9th Cir. 1997) (holding that the unauthorized use of an original trademark can qualify as trademark infringement); *see also Burger King Corp. v. Mason*, 710 F.2d 1480, 1493 (11th Cir. 1983), *cert. denied*, 465 U.S. 1102 (1984) (reasoning that "many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement"); *Sunsport Inc. v. Barclay Leisure Ltd.*, 984 F. Supp. 418, 422 (E.D. Va. 1997)  (holding that "[a]s a former licensee who continues to use the licensor's mark," defendant had to "overcome the presumption that it has infringed").  Thus, in cases such as this, where an identical mark is used on identical products, the courts have routinely held that trademark infringement exists.  *See, e.g., Gucci American, Inc. v. Pieta*, 2006 U.S. Dist. LEXIS 96701, *16-17 (C.D. Cal. 2006) ("The use of an identical mark on identical products is the paradigm of likelihood of confusion.").

Although actual confusion is not required to establish a likelihood of confusion, actual confusion has occurred as a result of Defendants' use of the Marks.  Customers have contacted Plaintiffs and informed them that they believed they were purchasing authorized PH(X) Glass water pipes when they made purchases from Defendants.  Carstens Decl., ¶ 14.  Customers have also informed Plaintiffs that they were confused by sales calls from both Plaintiffs and Defendants claiming to sell PH(X) Glass water pipes.  *Id.*  The confusion is especially great – and the need for immediate injunctive relief is especially pressing – here because Defendants are actively taking advantage of this confusion by having Clarke make sales calls to retailers in the same marketing channels shared with Plaintiffs, passing himself off as Carstens and/or as a representative of PH(X) Glass.  Carstens Decl., ¶ 13.  This activity alone warrants immediate injunctive relief.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 13 -

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

**C.**    **Plaintiffs Are Likely to Succeed on Their Claims for Unfair Competition and Unfair Business Practices Under California Business and Professions Code Section 17200**

Defendants' conduct also constitutes common law unfair competition, which includes "passing off" one's goods as those of another. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992). The tort also includes acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market. Id. A claim of common law unfair competition includes passing off and other fraudulent conduct, in addition to the narrower tort of trademark infringement. *Industrial Indemnity Co. v. Apple Computer, Inc.*, 79 Cal. App. 4th 817, 829-31 (1999). "The essence of unfair competition lies in the simulation and imitation of the goods of a rival or competitor with the purpose of deceiving the unwary public into buying the imitation under the impression that it is purchasing the goods of such competitor." *American Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 697 (Cal. 1935).

Defendants' conduct also violates Section 17200 of the California Business and Professions Code, which prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 (2008). Any person who has suffered injury in fact that results in economic loss as a result of unfair competition may seek to enjoin any party engaging in unfair competition. Cal. Bus. & Prof. Code §§ 17203 and 17204 (2008).

When Clarke calls Plaintiffs' customers and identifies himself as a representative of PH(X) Glass, he is attempting to fraudulently deceive Plaintiffs' customers into believing that they are purchasing PH(X) Glass water pipes and other products. In this way, Defendants are seeking to compete unfairly with Plaintiffs in a way that results in economic loss and substantial irreparable harm to Plaintiffs. Plaintiffs will thus succeed on their Section 17200 claim under each prong of the statute because Defendants' conduct constitutes an unlawful, unfair and fraudulent business practice. Such conduct also constitutes common law unfair competition because Defendants are passing off their goods as those of Plaintiffs, and because Defendants are exploiting Plaintiffs' reputation in the market in order to sell confusingly similar products.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 14 -
Case No.
C 08-02533 PJH

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

1

**D.    Plaintiffs Will Suffer Substantial Irreparable Harm in the Absence of Immediate Injunctive Relief**

2

3    It is well-settled that Lanham Act trademark injuries are irreparable.  *Abbott Laboratories,*

4    *v. Mead Johnson & Co., Inc.,* 971 F.2d 6, 18 (7th Cir. 1992).  "Once the plaintiff establishes a

5    likelihood of confusion between the plaintiff's mark and the defendants', it is ordinarily presumed

6    the plaintiff will suffer irreparable harm if injunctive relief is not granted."  *International Jensen,*

7    *Inc. v. Metrosound U.S. A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) (citations omitted).  Irreparable

8    harm is presumed because the plaintiff is deprived of its ability to control the nature and quality

9    of the infringing product.  *Visa International Service Association v. Visa/Master Charge Travel*

10   *Club*, 213 U.S.P.Q. 629, 636 (N.D. Cal. 1981).

11   The injury that Plaintiffs are suffering is substantial and irreparable.  Defendants seek to

12   sell their products through the same channels, and ultimately to the same customers, through

13   which Plaintiffs sells their products.  Carstens Decl., ¶ 12.  Plaintiffs have no way of controlling

14   the quality of Defendants' products and customer service.  If consumers purchase Defendants'

15   products, believing they are Plaintiffs' products, and are dissatisfied with them, the high

16   reputation of Plaintiffs' products will necessarily be injured.  The risk of substantial irreparable

17   harm is, moreover, especially great here because Clark is passing himself as a representative of

18   PH(X) Glass to Plaintiffs' customers.  Any poor business practice by Defendants – such as

19   rudeness to customers, mistakes with orders, or shipment of defective goods – will be wrongfully

20   attributed to Plaintiffs and will thus harm Plaintiffs' goodwill in the marketplace.  Indeed,

21   Plaintiffs have recently been informed by customers that the quality of the products being shipped

22   by Defendants and bearing the Marks is very low and that the association of these low-quality

23   products with PH(X) Glass is damaging Plaintiffs' reputation and goodwill.  Carstens Decl., ¶ 14.

24   It would be virtually impossible to accurately measure and quantify the amount of damage

25   that Plaintiffs would suffer with respect to the injury to its goodwill, if this Court fails to issue the

26   requested injunctive relief.  *See Regents of University of California v. ABC*, 747 F.2d 511, 520

27

28

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 15 -

1    (9th Cir. 1984) (injury to reputation is irreparable and supports the granting of an injunction).

2    Plaintiffs' substantial injuries cannot be adequately compensated through monetary relief.

3    **E.**        <u>**The Balance of Hardships Weighs Heavily in Favor of Plaintiffs**</u>

4               Plaintiffs' hardship if immediate injunctive relief does not issue will be great.

5    Defendants' hardship if an injunction issues is much less significant and is of Defendants' own

6    making.   The burden of any financial losses that Defendants may suffer is rightfully borne by

7    Defendants since they chose to continue to use the Marks after the ownership of the Marks

8    reverted back to Carstens.   Plaintiffs advised Defendants that they were infringing and warned

9    that legal action would follow.   Martin Decl.,   ¶ 7.   Yet, Defendants willfully chose to continue

10   their infringing conduct.   Defendants cannot claim the losses they may suffer as a result of having

11   to change to a non-infringing trademark is a viable hardship.  *See Novartis Consumer Health, Inc.*

12   *v. Johnson & Johnson Merck Pharmaceuticals*, 129 F. Supp. 2d 351, 369 (D.N.J. 2000), aff'd 290

13   F.3d 578 (3d Cir. 2002); *see also Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp.

14   2d 1016, 1028 (D. Minn. 2000) (party has no economic right to fruits of conduct that violates the

15   law.)   Defendants have no legitimate justification for their trademark infringement and unfair

16   business practices, or any other of the illegal acts alleged in the Amended Complaint.

17               On balance, Plaintiffs will bear a greater burden in the absence of an injunction than

18   Defendants will bear if an injunction issues.   The relief Plaintiffs seek through this Motion is not

19   unreasonable.   Plaintiffs simply seek to prevent Defendants' unauthorized use of trademarks

20   which they no longer own.  *See Visioneer, Inc. v. Umax Technologies, Inc.*, 1998 U.S. Dist.

21   LEXIS 23431 (N.D. Cal. 1998).

22   / / /

23   / / /

24   / / /

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.                    PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
C 08-02533 PJH                      FOR TEMPORARY RESTRAINING ORDER

1

IV.    **CONCLUSION**

2

For the reasons set forth above, Plaintiffs respectfully request that the Court GRANT this

3

motion and issue a temporary restraining order in accordance with the Proposed Temporary

4

Restraining Order and Proposed Preliminary Injunction submitted herewith.

5

6

DATED:        June 24, 2008                    SHARTSIS FRIESE LLP

7

8

By:*/s/ Joseph V. Mauch*

9                                                    JOSEPH V. MAUCH

10                                              Attorneys for Plaintiffs
                                                PH(X) GLASS, LLC and CHRISTOPHER
11                                              CARSTENS

12

13      7583\004\JMAUCH\1516784.3

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

PLAINTIFFS' MPA ISO PLAINTIFFS' EX PARTE MOTION
                                            FOR TEMPORARY RESTRAINING ORDER