SHARTSIS FRIESE LLP
JAMES P. MARTIN (Bar #170044)
JOSEPH V. MAUCH (Bar #253693)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: jmartin@sflaw.com, jmauch@sflaw.com

Attorneys for Plaintiffs
PH(X) GLASS, LLC and CHRISTOPHER CARSTENS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PH(X) GLASS, LLC and CHRISTOPHER CARSTENS,<br><br>    Plaintiffs,<br><br>v.<br><br>ROLAND CLARKE, PIC GLASSWARE, INC., JAMN EXACT, INC., and DOES 1 thorugh 10, inclusive,<br><br>    Defendants. | Case No. C 08-02533 PJH<br><br>**DECLARATION OF CHRISTOPHER CARSTENS IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER SETTING BRIEFING AND HEARING SCHEDULE FOR PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Judge:    Hon. Phyllis J. Hamilton<br>Location:  Courtroom 3, 17th Floor<br>Trial Date: Net Yet Set<br>Amended Complaint Filed: June 12, 2008 |

I, CHRISTOPHER CARSTENS, declare:

1. I am a plaintiff in this action and a citizen of the State of California, residing in Woodside, California. I am the managing member of PH(X) Glass, LLC ("PH(X) Glass"), also a plaintiff in this action. I have personal knowledge of the facts stated herein, except as to matters stated on the basis of information and belief, and I believe such matters to be true.

2. PH(X) Glass is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 17287 Skyline Boulevard in Woodside,

- 1 -

1  California. PH(X) Glass is the owner by assignment of certain intellectual property, including the
2  marks "PH(X)" and "PH(X) GLASS," as well as logos incorporating these marks (collectively,
3  the "Marks").

4      3.    I believe that Defendant Roland Clarke ("Clarke") is a citizen of Canada whose
5  current or last known residence is 1820 "A" Encinal Avenue in Alameda, California. I believe
6  that Clarke is an officer and the sole owner of at least two corporations that are infringing on
7  Plaintiffs' Marks; namely Defendants PIC Glassware, Inc. ("PIC Glassware") and Jamn Exact,
8  Inc. ("Jamn Exact"). I believe that Jamn Exact was incorporated by Clarke in 2006 in order to,
9  among other things, warehouse, pack, and ship products bearing the Marks. It is my
10 understanding and belief that Defendants Clarke, PIC Glassware, and Jamn Exact are all doing
11 business in Alameda, California, and that the acts alleged herein have occurred, in this District.

12     4.    On February 28, 2002, my father, Daniel Carstens, and I filed with the United
13 States Patent and Trademark Office ("the PTO") a Provisional Patent Application, United States
14 Serial No. 60/360,319, entitled "Healthier and More Efficient Tobacco Water Pipe by Means of
15 Multiple Chambers."

16     5.    In and around June 2002, I began using the Marks in commerce on glass water
17 pipes that were the subject of the Provisional Patent Application. I also began using the Marks on
18 other products, including T-shirts, lighters, and banners. I subsequently sold a large number of
19 products bearing the Marks. These products and the Marks associated with them became well
20 known to consumers and I believe that they acquired considerable goodwill.

21     6.    On February 28, 2003, I filed with the PTO a Nonprovisional (Utility) Patent
22 Application for the invention, United States Serial No. 10/377,417, entitled "Method for
23 Generating Small Bubbles for a Smoke-Filled Air Stream." On February 17, 2005, the PTO
24 issued a Notice of Allowance for all of the claims of the Nonprovisional Patent Application.
25 Subsequently, United States Patent No. 6,935,345 ("the '345 Patent") issued on or about August
26 30, 2005.

27     7.    After the Notice of Allowance was received and prior to the issuance of the '345
28 Patent, I entered into a Technology and Patent Rights Sale Agreement with Clarke and PIC

1  Glassware, effective June 1, 2005 (the "Agreement"). A true and correct copy the Agreement is
2  attached hereto as Exhibit A. Pursuant to the Agreement, I agreed that I would assign certain
3  intellectual property rights to PIC Glassware and Clarke in return for specified payments over
4  time. Pursuant to Section 2.3 of the Agreement, PIC Glassware and Clarke were jointly and
5  severally obligated to deliver to me one hundred fifty (150) monthly payments, each in the
6  minimum amount of $10,000.00, from the effective date of the Agreement until I had received the
7  total amount of $1,500,000.00. The first monthly payment was due on July 1, 2005. Each
8  subsequent monthly payment was required to be delivered to me by the first day of the month
9  following the previous monthly payment.

10        8.    Clarke and PIC Glassware failed to pay me the amounts due under the Agreement.
11  They made partial payments to me, which ranged from $0 to $7,500 each month, following the
12  Effective Date of the Agreement through January 2007. They have made no payments to me
13  since that time. At no time did they ever tender to me a monthly contractual payment equal to or
14  greater than the $10,000 minimum required by the Agreement. Although I cashed some of the
15  checks for partial payment, I did not waive Clarke's and/or PIC Glassware's compliance with the
16  contract. Moreover, Section 5.8 of the Agreement prohibits any modification or amendment
17  except by another agreement in writing signed by the parties, and I never signed such an
18  agreement.

19        9.    Although Clarke and PIC Glassware have ceased making any payments to me,
20  Defendants have continued to sell water pipes and other products containing the Marks.
21  Defendants have advertised their water pipes and other products containing the Marks in
22  magazines with national circulation and on Internet websites such as PHXGLASS.COM,
23  PHXGLASS.CA, and CAFEPRESS.COM/PHXCPSHOP. The products sold by Defendants
24  include not only the water pipes, but also T-shirts, coffee mugs, tote bags, hats, stickers, magnets,
25  and other merchandise bearing the Marks.

26       10.    After the rights to the '345 Patent and the Marks automatically reverted to me as a
27  result of Clarke and PIC Glassware's breach of the Agreement, I assigned all such rights to
28  PH(X) Glass. On February 29, 2008, I entered into an agreement with PH(X) Glass, assigning all

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 3 -

1 rights and interests in the Marks to PH(X) Glass. A true and correct copy of this agreement is attached hereto as Exhibit B.

11. Although I had hoped to avoid litigation with Defendants, my efforts to avoid a lawsuit were unsuccessful. It is my belief that Clarke is aware of the Complaint in this action filed on May 19, 2008, and the Amended Complaint filed on June 12, 1008. On May 24, 2008, Clarke sent an email to Peter Kazanjy ("Kazanjy"), a member of PH(X) Glass. In the email, Clarke stated, "It seems your old friend has jumped off the deep end and sued me in Federal court." Clarke then inquired if Kazanjy would be "testifying" in the lawsuit. Kazanjy copied me on the email that he sent to Clarke in response. A true and correct copy of Clarke's email and Kazanjy's response email is attached hereto as Exhibit C.

12. Defendants market glass water pipes bearing the Marks to many of the same retail shops and online commercial websites to which PH(X) Glass markets glass water pipes. In and around May of 2008, I spoke to the owner of a retail store in Northern California that sells PH(X) Glass products that carry the Marks. The owner informed me that he had received a call from an individual who passed himself off as a representative of PH(X) Glass seeking to procure an order for water pipes and other merchandise.

13. On June 3, 2008, I received a call from the owner of a retail store in Indiana that sells PH(X) Glass products. The owner, who knows both my voice and Clarke's voice, informed me that Clarke had called a few minutes earlier identifying himself as "Chris from PH(X) Glass" and attempting to procure an order for merchandise.

14. Various customers have recently contacted me and informed me that: (a) they believed they were purchasing authorized PH(X) Glass water pipes when they made purchases from Defendants; (b) they were confused by sales calls from both myself and Defendants in which we both claimed to sell PH(X) Glass water pipes; and (c) the quality of the products being shipped by Defendants and bearing the Marks is very low. I believe that the Defendants' conduct and the association of Defendants' low-quality product with PH(X) Glass is severely damaging PH(X) Glass' reputation and goodwill in the marketplace.

1  I declare under penalty of perjury under the laws of the State of California that the
2  foregoing is true and correct.
3  Executed on June 23, 2008 at WOODSIDE, California.

_____
CHRISTOPHER CARSTENS

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 5 -

| Case No. | DECL. CARSTENS ISO EX PARTE MOTION FOR TRO & |
| C 08-02533 PJH | ORDER SETTING BRIEFING SCHEDULE |

EXHIBIT A

# Technology and Patent Rights Sale Agreement

This Agreement is effective June 1, 2005 (the "Effective Date"), by and between Christopher Carstens, an individual with a residence in Santa Ana, California ("Owner") and PIC Glassware, Inc. (hereinafter "Purchaser"), a Canadian corporation, having a principal office located at 191 Hatt St. Dundas ON, Canada L9H 2G7 and Roland Clarke an individual with a residence in 191 Hatt St., Dundas ON, Canada L9H 2G7 (hereinafter together referred to as "Purchaser").

WHEREAS Owner owns all the rights, titles and interests in certain confidential information, trade secrets, technology, designs, technical data, and patent and trademark rights relating to low pressure drop air bubble dispersion devices; and

WHEREAS Purchaser desires to purchase and own in entirety all of said rights, titles and interests in Owner's confidential information, trade secrets, technology, designs, technical data, and patent and trademark rights relating to a low pressure drop air bubble dispersion devices;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and for the mutual obligations and premises herein contained, the parties hereto hereby agree as follows:

1.0    DEFINITIONS

    1.1    "Patent Rights" shall mean the application for a United States Letters Patent Serial No. 10/377,417, filed 2/28/2003 (Title: Small bubble generator for smoking apparatus; Inventor: Christopher Carstens; Claims benefit of Serial No. 60/360,319 filed 2/28/2002) and any patent issuing therefrom, any corresponding foreign patent applications and/or patents and/or related U.S. patent applications or patents, including without limitation divisionals, continuations, continuations in part. Owner owns all the rights, titles and interests in this patent application. Owner has received a notice from the United States Patent and Trademark Office that claims pending in this application have been allowed.

    1.2    "Trademark Rights" shall mean all the trademark rights and goodwill arising under or accruing to Owner under common law and state and federal laws from Owner's use on goods incorporating Owner's low pressure drop air bubble dispersion devices under the trademark "PHX" and/or the following design mark:



Trademark Rights include ownership and control of the Internet website with the address of "www.phxglass.com".

1.3 "Technology" shall mean all engineering, specifications, designs, technical data, test results, and other technical information related to the conception, development, construction and production of products incorporating Owner's low pressure drop air bubble dispersion devices, whether or not such technical information comprises trade secrets or confidential information or patented technology.

1.4 "Confidential Information" means all Technology, business development information, customer lists, and other information in possession or control of Owner related to Owner's low pressure drop air bubble dispersion devices which is not known to the public and which has value in the production or sale of products incorporating such information.

2.0 PURCHASE TERMS

2.1 Scope of Purchase. Subject to the exceptions below related to transfer of the "Patent Rights" until after issuance of a United States Letters Patent thereunder, Owner hereby transfers, delivers and sets over to Purchaser, jointly, all Owner's rights, titles and interests in and to the Patent Rights, the Trademark Rights (including all of Owner's goodwill accrued thereunder), the Technology, and the Confidential Information. Owner shall execute at Purchaser's expense all documents required by Purchaser to transfer such rights, titles and interests to Purchaser. Owner shall deliver to Purchaser all documents relating to the Trademark Rights, the Technology, and the Confidential Information within 30 days from the effective date of this Agreement. Owner shall deliver to Purchaser all documents relating to the Patent Rights within 30 days from the issuance of a patent thereon, although Owner shall deliver to Purchaser a copy of the application now pending with the USPTO within 30 days of the effective date of this Agreement.

2.2 Delay of Transfer of Patent Rights. At the effective date of this Agreement, claims have been allowed in the Patent Rights in the USPTO. Owner is in a superior and more efficient position to take steps necessary to seek issuance and pay issue costs for a Letters Patent on the Patent Rights and retains all rights, titles and interests in the Patent Rights until such time as such a patent issues. Until such time, Purchaser is granted a paid-up, royalty free, and exclusive license under the Patent Rights to make, use, offer to sell or sell products incorporating the concepts there under.

2.3 Consideration. Jointly and severally, Purchaser is obligated hereunder to deliver to Owner one hundred and fifty monthly payments, each in the minimum amount of $10,000.00 USD, from the effective date of this Agreement until Owner has received from Purchaser the total amount of $1,500,000 USD. The first monthly payment of $10,000.00 USD is due within 30 days of the effective date of this Agreement. Each subsequent monthly payment must be delivered to Owner by the first day of the month following the previous monthly payment. Payments that are

overdue may be accepted by Owner without waiving any rights to receive subsequent monthly payments on time. Payments that are overdue by more than 30 days overdue and are accepted at the discretion of the Owner shall be delivered with an additional payment equal to the 1.5% per month. Unless specifically accepted by Owner, any overdue payments under this Agreement constitute an immediate and material breach of the Agreement by Purchaser. Each monthly payment under this Agreement shall be delivered to Owner at the following address or such address as indicated later by the Owner in a written notice to Purchaser:

Owner Payment Delivery Address:
1109A Woodland Ave
Menlo Park, CA 94025

2.4  Non-competition. For the term of this Agreement, Owner shall not engage in any acts, directly or indirectly, which would in any manner interfere with or cause competition with Purchaser in the field of devices incorporating any of the concepts embodied in the Patent Rights, Trademark Rights, Technology or Confidential Information.

3.0  TERM AND TERMINATION

3.1  Term. This agreement shall remain in force unless terminated by breach by Purchaser.

3.2  Termination By Purchaser's Breach. If Purchaser shall fail to deliver on time any of the monthly payments required hereunder, this Agreement shall terminate and all rights, titles, and interests in Patent Rights, Trademark Rights, Technology, and Confidential Information shall immediately revert to, transfer to and shall be delivered to Owner without further action by Owner. Owner shall immediately cease use, offers to sell, manufacture, distribution, presentation or sale of all products and materials incorporating in any manner the Patent Rights, Trademark Rights, Technology, or Confidential Information. Purchaser shall after termination of this Agreement, at Purchaser's expense, execute all documents required by Owner to perfect Owner's rights, titles, and interests in Patent Rights, Trademark Rights, Technology, and Confidential Information. This Agreement shall not automatically terminate under the terms of this paragraph unless Purchaser has notified Owner of Purchaser's intent to fail to deliver a monthly payment on time and Purchaser and Owner have entered into a written agreement extending the date for delivery of said monthly payment.

3.3  Delivery of Unpaid Monthly Payments Upon Termination. Upon termination of this Agreement, Purchaser shall deliver monthly payments that have accrued as unpaid under this Agreement within 15 days from that date of termination.

    3.4    Disposition of Products or Materials Incorporating in any manner the Patent Rights, Trademark Rights, Technology, or Confidential Information upon Termination. If this Agreement is terminated in accordance with Section 3.1 of this Agreement, Owner shall have the option, at Owner's discretion, to purchase all products and materials incorporating in any manner the Patent Rights, Trademark Rights, Technology, or Confidential Information at their original acquisition cost.

4.0    MANUFACTURE, DISTRIBUTION AND SALES

    4.1    Manufacture, Distribution and Sales. Purchaser shall be solely responsible for the manufacture, distribution and sale of any products and materials incorporating in any manner the Patent Rights, Trademark Rights, Technology, or Confidential Information. Purchaser shall be solely responsible for any claims of injury or liability arising from such design, manufacture, distribution and sale of any products and materials incorporating in any manner the Patent Rights, Trademark Rights, Technology, or Confidential Information hereunder. Purchaser shall carry products liability insurance in amount reasonable and customary in the trade.

    4.2    Licenses Or Approvals. To the extent necessary or customary to obtain any required license, approval, certificate, registration or other statutory or regulatory approval required by any Federal, state or local agency or governmental authority to manufacture, distribute or sell the Licensed Product(s), Purchaser agrees to expend reasonable effort to obtain such approvals. Purchaser shall be responsible for all costs associated with obtaining such approvals.

    4.3    Purchaser, jointly and severally, shall indemnify, defend and shall hold Owner harmless against any claims, liabilities, losses, demands, suits, damages and expenses, including without limitation, reasonable attorney fees and expenses, and liabilities of whatsoever kind or nature imposed on, incurred by or that may be asserted against Owner in connection with or arising out of the performance, safety, manufacture, offer for sale, sale, or use of products incorporating any of the Patent Rights, Trademark Rights, Technology, or Confidential Information hereunder after the effective date of this Agreement.

5.0    MISCELLANEOUS

    5.1    Notice. All notices, statements, reports and approvals required or permitted to be given hereunder shall be given in writing in the English language and shall be deemed to have been given upon delivery in person or upon the expiration of ten (10) days after deposit in a lawful mail depository, first class postage prepaid and addressed to the other party at the address specified below. Either party may change its address by giving notice as provided herein.

Technology and Patent Sale Agreement

    Purchaser: _____
                      _____
                      _____

    Attn: _____

    Owner: _____
                    _____
                    _____

5.3    Severability. All rights and restrictions contained herein may be exercised and shall be applicable and binding only to the extent, that they do not violate, any applicable laws and are intended to be limited to the extent necessary so that they will not render this Agreement illegal, invalid or unenforceable. If any provision or portion of any provision of this Agreement not essential to the commercial purpose of this Agreement shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the parties that the remaining provisions or portions thereof shall constitute their agreement with respect to the subject matter hereof, and all such remaining provisions or portions thereof shall remain in full force and effect. To the extent legally permissible, any illegal, invalid or unenforceable provision of this Agreement shall be replaced by a valid provision which will implement the commercial purpose of the illegal, invalid or unenforceable provision. In the event that any provision essential to the commercial purpose of this Agreement is held to be illegal, invalid or unenforceable and cannot be replaced by a valid provision which will implement the commercial purpose of this Agreement, this Agreement and the rights granted herein shall terminate.

5.4    Choice of Law. The validity and effect of this Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California, United States of America (without regard to the principles of conflict of laws of such State).

5.5    Jurisdiction. Any and all disputes arising out of or in connection with the negotiation, execution, interpretation, performance or nonperformance of this Agreement shall be resolved with resort solely to the courts of the State of California. The parties agree that the courts of the State of California shall have sole and exclusive jurisdiction of all such disputes and Purchaser expressly consents to the personal jurisdiction of such Courts.

5.6    Assignability. Except as provided in the following sentence, neither party shall assign or delegate this Agreement or any of its rights, duties, or obligations arising hereunder to any other person or entity whatsoever without the prior express written consent of the other party, which consent shall not be unreasonably withheld.

5.7   Headings and Paragraph Numbers. The headings as to contents of particular paragraphs are inserted only for convenience and shall not be construed as part of this Agreement or as a limitation on the scope of any terms or provisions of this Agreement.

5.8   Entire Agreement - This Agreement constitutes the entire agreement between Owner and Purchaser with respect to the Subject matter of this Agreement and shall not be modified, amended or terminated except as herein provided or except by another agreement in writing executed by the parties hereto. Any further agreements or amendments which change, affect or impact the terms and conditions hereof shall be attached hereto as Exhibits upon their execution.

Technology and Patent Sale Agreement

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates indicated below.

| PURCHASER | OWNER |
|---|---|
| PIC Glassware, Inc. | |
| By: _____ | _____ |
| Roland M Clarke, President | Christopher Carstens, as an individual |
| Date: June 10/2005 | Date: _____ |
| By: _____ | |
| Roland M Clarke, as an individual | |
| Date: June 10, 2005 | |

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates indicated below.

| PURCHASER | OWNER |
|---|---|
| PIC Glassware, Inc. | *(signature)* |
| By: _____ | _____ |
| Roland M Clarke, President | Christopher Carstens, as an individual |
| Date: _____ | Date: 6/8/05 |
| By: _____ | |
| Roland M Clarke, as an individual | |
| Date: _____ | |

**EXHIBIT B**

## ASSIGNMENT OF TRADEMARKS AND INTELLECTUAL PROPERTY

This Assignment of Trademarks Rights and Intellectual Property Rights (the "Assignment") is made as of February 29 2008, between Christopher Carstens, an individual ("Assignor") and PH(X) Glass, LLC ("Assignee") with reference to the following:

WHEREAS, Assignor has an ownership interest in the Trademark Rights (defined below) and Intellectual Property Rights (defined below) relating to a low pressure drop air bubble dispersion device or other water pipe (the "Product"); and

WHEREAS, Assignor has agreed to assign, transfer and convey to Assignee all of his ownership rights in and to the Trademark Rights and Intellectual Property Rights.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby transfers assigns, transfers and sets over to Assignee and its successors and assigns, full and exclusive right, title and interest in and to the Intellectual Property Rights, including but not limited to the Trademark Rights, that Assignor may now have or ever has had. For purposes of this Assignment, "Trademark Rights" means all the trademark rights and goodwill arising under or accruing under common law and state and federal laws from the use of "PHX" and/or "PH(X)" and/or any confusingly similar mark, either alone or in combination with other words, letters or symbols, on or in connection with any Product, service or Internet website. For purposes of this Assignment, "Intellectual Property Rights" means any and all ideas, inventions, technology, engineering, specifications, designs, technical data, test results, technical information, confidential information, trade secrets, formulas, discoveries, know-how, manufacturing information, business development information, customer lists, supplier lists, computer programs, software, original works of authorship, writings, patents, copyrights, Trademark Rights, website URLs, improvements, business plans and concepts, and other information related to the Products. The foregoing assignment includes, without limitation (a) the right to register the Intellectual Property Rights in the United States and in any foreign country, (b) the exclusive right to sell, assign, lease, license, use or otherwise transfer or exploit the Intellectual Property Rights, and (c) the right to enforce, sue for and collect damages by reason of any past, present or future infringement or misuse of any of the Intellectual Property Rights.

Assignor agrees to execute and deliver to Assignee any and all instruments and documents that Assignee may reasonably consider necessary or convenient, and to provide all assistance reasonably requested by Assignee, to evidence, maintain, defend, effect or enforce this Assignment as well as Assignee's right, title and interest in and to the Intellectual Property Rights, and to effect the assignment and transfer of the Trademark Rights to Assignee.

IN WITNESS WHEREOF, this Assignment has been duly executed and delivered by the undersigned on the date set forth below their respective signatures.

ASSIGNOR: _/s/ Christopher Carstens_____
Christopher Carstens
Date: February 29, 2008

ASSIGNEE:

PH(X) Glass, LLC
By: _/s/_____
Title: PRESIDENT
Date: February 27, 2008

7583\001\JMARTIN\1484306.1

1

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF California
COUNTY OF Santa Clara

On Feb. 29th, 2008, before me, Roumiana A. Kadiev
    DATE                                      NAME, TITLE OF OFFICER – E.G. "JANE DOE, NOTARY PUBLIC"

personally appeared Christopher Carstens
                             NAME(S) OF SIGNER(S)

ROUMIANA A. KADIEV
Commission # 1785986
Notary Public - California
Santa Clara County
My Comm. Expires Jan 17, 2012

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

Place Notary Seal Above

―――――――― *OPTIONAL* ――――――――
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**CAPACITY CLAIMED BY SIGNER**
☐ INDIVIDUAL
☐ CORPORATE OFFICER(S)

☐ PARTNERS    ☐ LIMITED
                      ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

# EXHIBIT C

## Mauch, Joseph V.

| | |
|---|---|
| **From:** | Chris Carstens [christopher.carstens@gmail.com] |
| **Sent:** | Saturday, May 24, 2008 2:29 PM |
| **To:** | dave@taste.com; Martin, James; Mauch, Joseph V.; heathergillette@gmail.com |
| **Subject:** | Fwd: PHX and Federal Court |

```
---------- Forwarded message ----------
From: Peter Kazanjy <petekazanjy@stanfordalumni.org>
Date: Sat, 24 May 2008 13:50:50 -0700
Subject: Re: PHX and Federal Court
To: Roland Clarke <roland.clarke@gmail.com>
Cc: christopher.carstens@gmail.com

Roland, you absconded with the company's assets, while still owing me, personally, more
than 35k dollars. I'm sure I'll be testifying, but I don't think the truth is going to
look very favorable to your cause.
This is what happens when you defraud people.

Cc'ing Chris for reference.

On 5/24/08, Roland Clarke <roland.clarke@gmail.com> wrote:
> Pete,
>
> It seems your old friend has jumped off the deep end and sued me in
> Federal court.
> Would you be resistant to testifying as to the truth that the
> organization was founded as a partnership during late 2005 and 2006?
>
> Let me know.
>
>     Roland
>


--
Peter Kazanjy
petekazanjy@stanfordalumni.org
cell: 650 892 4475

Can you stick a sticker? If yes, you can save a tree a year:
http://www.thesecomefromtrees.com

--
Sent from Gmail for mobile | mobile.google.com
```

1